ALKIRE GROCER COMPANY, Defendant in Error, v. F. M. TAGART, Plaintiff in Error.

Kansas City Court of Appeals, January 14, 1895.

1. **Bills of Sale:** STATEMENTS: FRAUDS AND PERJURIES.  Bills for goods setting forth the contract, the parties thereto, the subject-matter, the property sold, the price and manner of payment, as well as the terms of sale, when delivered and accepted, are, in fact, bills of sale sufficient within the statute of frauds to pass title to the merchandise therein described.

2. **Splitting Demands:** JUDGMENT:  BAR.  A judgment concludes the parties in respect to the cause of action stated in the pleadings whether it includes the whole or only part of the demand sued upon.

3. ———: ———: ———: DISTINCT DEMANDS.  Demands rising out of separate and distinct causes of action are not governed by the preceding rule; but several claims payable at different times, arising out of the same transaction become separate causes of action as each liability accrues, but if no action is brought until more than one is due, all due must be included in the one action.

4. ———: DISTINCTION.  The distinction between entire demands and distinct demand is that the former arises out of one and the same act, and the latter out of different acts.

5. ——: SINGLE ACTION. Where there is an account for goods sold or labor performed, etc., at different times, there must be an express contract or circumstances such as to raise an implied contract embracing all the items to make them a single or entire demand or cause of action.

6. Limitation: ACCOUNT: INTEREST. *Arguendo*, in a case of a running account, the statute of limitations begins to run only from the last item therein and interest from the maturity.

7. Splitting Demands: DISTINCT AND SEPARATE DEMANDS: JUDGMENT BAR. SMITH, P. J., two sales by a wholesale merchant to a retail tradesman, made through a traveling salesman on the same day, but evidenced by separate bills, one due thirty days and the other sixty, each bearing interest from the date of maturity, with different rates of discount if paid within ten days, do not constitute an entire claim and a judgment on one is not a bar to an action on the other. GILL, J., *dissenting in a separate opinion*, ELLISON, J., *concuring in a separate opinion*.

*Error to the Cole Circuit Court.*—HON. D. W. SHACK-LEFORD, Judge.

AFFIRMED.

*J. R. Edwards* and *L. C. Krauthoff* for appellant.

The court erred in entertaining jurisdiction of this suit after the trial of the other case and judgment therein. Justice of the peace had no jurisdiction. The evidence shows, and is undisputed that at the time this suit was brought all the claim plaintiff had or pretended to have against defendant was due, and that the plaintiff's agent and the justice split up the demand so as to give the justice jurisdiction the whole amount then claimed exceeding his jurisdiction. This could not be done. R. S. 1889, secs. 6142 and 3; 59 Mo. Rep. 355; *Union R. R. Trans. Co. v. Traube*, 73 Mo. Rep. 245, 255; *Robbins v. Conley*, 47 Mo. App. 502.

*Silver & Brown* for respondent.

Defendant's defense, founded on the theory of improper splitting of a cause of action, or on *res judi-*

*cata,* is not well taken. Where demands result from several sales or transactions, especially where payments are to be made at different specified times, the items pertaining to each transaction are the subject of a distinct action. *Brown v. King,* 10 Mo. 56; *Wagner v. Jacoby,* 26 Mo. 532; *Flaherty v. Taylor,* 35 Mo. 451; *Railroad v. Traube,* 59 Mo. 355.

SMITH, P. J.—The plaintiff corporation, a wholesale grocer, through its traveling salesman, sold and delivered to the defendant, a retail merchant, seven several bills of merchandise. Two of these bills, one amounting to $76.88, and the other to $97.08, were of the date of September 12, 1890. The other five were of dates prior to these two. Each and every one of them were sent to the defendant in advance of the receipt of the merchandise by him. On their face they showed the terms and conditions of the sales. In some instances they were on sixty and in others on thirty days time with two per cent. off, if paid within ten days, after the sale, if not paid when so due, then the amount of each bill was to bear ten per cent. interest therefrom till paid.

On December 10, 1890, the defendant had not paid for the said bills of merchandise, although they were all past due. Defendant had, a few days previous to the date of the last two bills, made a small remittance without indicating on which the same should be applied as a credit. The aggregate amount of all these several bills was in excess of the jurisdiction of a justice of the peace, but omitting that of September 12, 1890, for $76.88 therefrom and it was within it. The plaintiff brought one suit before a justice for the six bills, amounting to $230.74, and another on the omitted one of $76.88. Both suits were subsequently removed by appeal into the circuit court where there were trials.

In that for the larger amount the defendant had judg-
ment and in that for the smaller, which is the present
one, plaintiff had judgment from which defendant has
appealed.

The judgment for the defendant in the suit on
the six bills having been obtained before the trial of
this suit, the defendant interposed the defense that the
judgment in the former was a bar to the latter. The
trial court, by its instructions, refused to recognize this
as a valid defense. Each bill was clear and specific, as
has already been seen, in setting forth a contract, the
parties thereto, its subject-matter, the property sold,
the price and manner of payment as well as the terms
of sale. And when delivered and accepted was in
effect a bill of sale sufficient within the statute of frauds,
to pass the title of the merchandise therein described
to the defendant. *Davis v. Bradley*, 24 Vt. 55; *James
v. Patton*, 8 Barb. 344.

It is now well settled that a judgment concludes
the rights of the parties in respect to the cause of action
stated in the pleadings, whether it includes the whole
or only part of the demand sued on, upon the ground
that an entire claim arising either upon contract or
wrong can not be split up into several actions. *When
the demands arise out of separate and distinct causes of
action the rule is otherwise.* And even where several
claims, payable at different times, arise out of the same
contract or transaction, separate actions may be brought
as each liability accrues; but in this case it has been
held that if no action is brought until more than one is
due, all that are due must be included in one action;
and if an action is brought when more than one is due,
a recovery in that suit will be a bar to a second action
brought to recover the other claims that were due when
the first was brought. *Union R. & T. Co. v. Traube*,

59 Mo. 355; *Brown v. King*, 10 Mo. 56; *Wagner v. Jacoby*, 26 Mo. 532; *Flaherty v. Taylor*, 35 Mo. 451.

The true distinction between demands or rights of action which are single and entire, and those which are several and distinct is, that the former immediately arise out of one and the same act or contract and the latter out of *different acts or contracts*. As is said in *Luce v. Sturges*, 16 N. Y. 548: "Perhaps as simple and safe a test as the subject admits of, by which to determine whether a case belongs to one class or the other, is by inquiring whether it rests upon *one* or *several acts or agreements*. In the case of torts, each trespass or conversion, or fraud, gives a right of action and but a single one, however numerous the items of wrong or damage may be. The case of a contract containing several stipulations to be performed at different times is no exception, although the action may be maintained on each stipulation as it is broken before the time for performance of the others, the ground of action is the stipulation which is in the nature of a several contract."

When there is an account for goods sold, or labor performed, where money has been lent to, or paid for, the use of a party at different times, or several items of claim spring in any way from contract, whether one only or separate rights of action exists, will, in each case, depend upon whether the case is covered by *one* or *separate contracts*. The several items may have their origin in one contract, as on an agreement to sell and deliver goods, or perform work, or advance money; and usually in the case of a running account it may be fairly implied that in pursuance of an agreement an account may be opened and continued either for a definite period or at the pleasure of both the parties. But there must be either an *express contract, or the circumstances must be such as to raise an implied contract*

*embracing all the items to make them, when they arise at different times, a single or entire demand or cause of action.*

It is true, as already indicated, that on September 12, 1890, the plaintiff sold defendant two bills of merchandise, one of which is the foundation of this action, and the other is one of the six in the action in which defendant prevailed. These two sales, though on the same day, were separate and distinct transactions, as appears by the bills of sale evidencing the same. One of them was on thirty and the other on sixty days' time, each to bear interest from the date when due and payable. These bills are to be distinguished from a running indivisible account which is due on demand and where interest begins only after demand. R. S., sec. 5872. In case of a running account the statute of limitation begins to run only from the last item therein, while here the interest and the statute of limitations both begin to run from the maturity of each bill.

In *Beck v. Devereaux*, 9 Neb. 109, where by agreement bills were to be made out at the end of every month, it was ruled, that, while an entire account for two months might have been included in one action the plaintiff was under no obligation to do so. The amount of the sales for each month was an independent demand and would draw interest from the time it fell due. The account for each month was a separate and distinct cause of action and that a recovery on the account for the first of the two months would not bar an action on that for the second. The several bills here do not sustain the connection to each other that ordinarily obtains between the items of an account for goods furnished by a tradesman to his customer. *Harrison v. Hall*, 48 Pa. St. 24.

Nor is this a case of a running account where it was specially agreed or impliedly understood between

the parties that it should be kept open and continued as one and the same transaction. The undisputed fact appearing that each sale was made on a definite time after the expiration of which if not paid the amount of the same was to bear a specified rate of interest from maturity clearly repels the presumption that there was an agreement that all of these separate bills should constitute a single transaction. *Thompson v. Brown*, 50 Mo. App. 314. There was not the semblance of proof of any such express agreement nor of facts from which the law would imply its existence.

It does not necessarily follow, as defendant seems to suppose, that because the sale evidenced by the bill sued on was one of two made on September 12, that therefore the two were but one transaction. It may be that, in the absence of evidence to the contrary, such would be the presumption, but not so here where the sale bills conclusively show that each sale, though made on the same day, was an independent and distinct transaction.

Applying these tests, it seems clear enough to us that the plaintiff's said several bills did not constitute an entire claim. In a court of competent jurisdiction we have no doubt that each bill could have been declared upon in a separate count in a single action, but the law did not require the suit to be brought in that way. Plaintiff had a right to unite in one suit before a justice as many of these accounts as it saw proper provided in doing so they did not exceed the jurisdiction of the justice, and a judgment in an action so brought would not bar another action on the others not included.

We discover no merit in the defendant's other contentions. Finding no fault with the action of the trial court, we must, of course, affirm the judgment. ELLISON, J., concurs. GILL, J., *dissents*.

GILL, J. (*dissenting*).—I can not concur in the foregoing opinion, either as to its statement of facts or conclusions of law. As I read the record, this was simply the matter of an ordinary running account—the sale of goods by a wholesale merchant to a country store—wherein various items were furnished during the months of June, July, August and September, with partial payments, leaving a balance of $303.80 due on December 10, 1890. On that day the plaintiff's agent brought two suits before a justice one for $230.76 and the other for $73.04. He testifies that he split up the account so that he could sue before a justice of the peace. Plaintiff was defeated in the first suit for $230.76, and I think a judgment therein ought to be a bar to the second. *Robbins v. Conley*, 47 Mo. App. 502; *Steigleider v. Railroad*, 38 Mo. App. 511; *Mackey v. Hyatt*, 42 Mo. App. 443; *Skeen v. S. Engine & Thresher Co.*, 42 Mo. App. 158.

The account as it stood, on December 10, 1890, when said suits were brought, was one demand and only one cause of action. It was for a balance due on a running account. "Where it is specifically agreed, or impliedly understood, between the parties that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account is considered in this state as one continuous account and one demand." *Ring v. Jamison*, 2 Mo. App. 584; *Boylan v. St. Bt. Victory*, 40 Mo. 244; *Madison Coal Co. v. Colona*, 36 Mo. 446.

Coming down now to the sale of goods on September 12, 1890 (which was the last bill sold) I must differ with my associates in the statement made that it was *conclusively shown* that there were two separate and distinct sales made on that day. As I understand it, the evidence quite clearly shows the contrary, and that there was

one, and only one, transaction.   Bick, plaintiff's travel-
ing salesman, who sold the goods to defendant, testified
that on that day he went to defendant's store and took
an order which he sent into the house at St. Louis; and
the bills as sent out refer to one, and only one, order
(to wit:   No. 16074).   It would appear, however, that,
of the goods that day ordered by defendant, some were
sold on thirty days and others on sixty days time.
However, all these goods were bought at one and the
same time by one and the same order.   It was simply
one transaction wherein certain goods were sold to be
paid for in installments—part in thirty days and part in
sixty days.   But when the two suits were brought both
installments were past due.   And this being the case
we have a state of facts fitting the law announced by
our supreme court in *Union R. R. Co. v. Traube*, 59 Mo.
355, to wit:   "Where several claims payable at different
times arise out of the same contract or transaction,
separate actions may be brought as each liability
accrues; but in this case it has been held that if no
action is brought until more than one is due, all that
are due must be included in one action; and if an
action is brought when more than one is due a recovery
in that suit will be a bar to a second action brought
to recover the other claims that were due when the first
one was brought."

Now, the account sued on in this action is for a
portion of the goods included within the one order of
September 12, 1890,—the remaining portion of that
order was made the basis of another action.   When
the entire amount of that one purchase had become
due, plaintiff, under the rule above announced, should
have brought one action for the entire debt; it had no
right to vex the defendant twice for the same cause of
action.

ELLISON, J. *(concurring).*—An examination of the record has led me to a concurrence in the opinion of SMITH, P. J. The record discloses this state of facts in reference to the purchases of goods made by defendant: On June 12, 1890, he bought a bill amounting to $89.42. This bill was on sixty days time, but if cash was paid in ten days or less, one per cent. was to be deducted. On July 25, 1890, he bought a bill amounting to $13.11, on thirty days time, with one per cent. off, if he would pay in ten days or less. On the same day he bought another bill amounting to $44.94, on sixty days time, two per cent. to be deducted, if he should pay in ten days or less. On August 11, 1890, he also bought two bills one of $43.90, on thirty days time, with one per cent. off, if he paid in ten days or less; and the other of $36.26, on sixty days time, with two per cent. off, if he paid in ten days or less. He then, on September 12, 1890, bought two bills, one for $97.08, on thirty days time, with two per cent. off, if he should pay in ten days or less, and with ten per cent. interest from maturity. The other was for $73.04, on sixty days time, with two per cent. off, if paid in ten ·days, and ten per cent. interest from maturity.

Plaintiff joined in one suit all these bills, except the last one, and was defeated, the defendant having shown, at least, to the satisfaction of the jury, that he had paid them. On the day that plaintiff instituted that action, he brought the present suit on the last bill, and the question is: Does the judgment for defendant on the other bills bar the action on this bill? It is true, as stated by Judge GILL, that plaintiff's agent testified he did not join the bill now in controversy with· the others, for the reason it would have made a total amount above the jurisdiction of a justice of the peace.

These different bills were sold to defendant by a drummer, and it is true that the order for the two bills of September 12, is named on each of the bills as "No. 16074." But this, of course, has reference to the drummer's series of numbers for different orders which he had taken over the country generally.

It will be noticed that the different bills purchased at the times stated, evidence different . contracts. Some of the bills mature in sixty, and some in thirty days time. In some of them two per cent., and in others one per cent. is to be deducted for cash paid in ten days. And the two purchased September 12, one of which is here sued on, not only mature at different dates and provide for two per cent. off for cash in ten days, but each provides for interest after maturity. These transactions between these parties were certainly separate and distinct transactions, and, to my mind, each transaction just as certainly represents a separate and distinct contract. It seems to me that the specific statement which I have made demonstrates this. While there is contrariety of opinion as to some phases of questions similar to the one involved here, I believe it is not disputed anywhere, that if the transactions are separate and are the subject of separate contracts, then each must necessarily represent a distinct cause of action.

It is true it frequently happens that several installments successively become due, which have arisen from one transaction. In such case, the rule is that you may sue on each installment as it falls due, or on any number that are due; and you must unite in one suit all that are due when the suit is instituted. As, if A rents a farm of B for a year, at ten dollars per month, payable monthly, if A allows more than one month's rent to become due and then sues B, he must unite in the one suit *all* that are due. So, if A should

sell a single bill of goods to B, the latter agreeing to pay for them in successive installments, all installments which are due at the time of bringing suit must be united in the one action.    These illustrations represent several debts due at different times, yet all spring from the one transaction and one contract.    But in the case at bar, each bill represents a separate transaction, based on a distinct and independent contract.    Whenever such is the case, the plaintiff can elect to sue on one or more in one action.

Defendant, however, is not put to the necessity of characterizing the nature of either of the purchases prior to those of September 12.    For, looking at those two purchases disconnected from the others, I concede that, if they are such as that if suit is brought on one only, after both are due, the other would be barred, the present action is barred; since that is what has really been done, the former suit now pleaded in bar having included one of these bills.    The real question, therefore, is: "Was the purchase of these two bills on the same day (conceding they were purchased at the same time) a single transaction?"    I think not.    This is apparent on the face of the two bills.    They cover different articles of property, at different prices and on different terms.    Time does not necessarily determine whether a transaction is single.    Several times may, together, cover a single transaction, or one time may witness several transactions.    If one person says to another, "I will give you $100 in six months, with eight per cent. interest, for your horse, and I will give you $25 in twelve months, with six per cent. interest, for your cow," and this is agreed to, we have two distinct transactions and two distinct contracts had and made at the same time.    And certainly these represent different and independent causes of action.

A reference to a few of the decided cases will, I think, serve to make my position plain:

In *Brown v. King*, 10 Mo. 56, the plaintiff had sold to the defendant several lots of bacon a few weeks apart, and it was held that an instruction was erroneous which assumed a recovery for bacon sold and delivered on September 11, was a bar to a claim for bacon sold the month before. In *Smith v. Jones*, 15 Johns. 229, there was an attempt to divide a claim for three barrels of potash into two actions; the court held that, as there was one contract for the entire quantity and no proof that the "ashes were sold at different times, *or in different parcels*," the demand could not be divided. In *Phillips v. Berick*, 16 Johns. 136, the court said that there was no case or *dictum* which required a party to join in one suit, several and distinct causes of action, merely because they belonged to the same family. That the court might, to prevent vexation, under some circumstances, order a consolidation or several suits pending at the same time. That it was at "the election of the plaintiff, if he has distinct causes of action, to sue upon all or any of them when he pleases; and he has the further election to unite in one suit, under certain restrictions, not now necessary to be stated, several causes of action; but the defendant can not compel him to do this." Again in *Jackson v. Colver*, 1 Wend. 487, there was a sale at one time and by one contract, of three tons of hay at $8 per ton, which was delivered in two deliveries of one and one half tons each. The court held that as there was one contract and one transaction, the demand was indivisible. In *Bendernagle v. Cocks*, 19 Wend. 215, the court said that the rule of indivisibility of demands did not extend to those which arose on distinct contracts. In *American Sewing Machine Co. v.*

*Thornton*, 28 Minn. 418, it was held that in the absence of an agreement or circumstances showing it was intended that distinct contracts of sale should constitute a running account, they were to be considered as distinct causes of action.   And so in the case of *Dulaney v. Payne*, 101 Ill. 325, it was held that distinct contracts, though made at the same time, constitute distinct causes of action.